UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMANTHA MARCIANO,

                Plaintiff,

v.

NBCUNIVERSAL MEDIA LLC,

                Defendant.

23 Civ. 8127 (DEH)

**OPINION AND ORDER**

---

DALE E. HO, United States District Judge:

    In this suit, Plaintiff Samantha Marciano ("Plaintiff") files suit against Defendant NBCUniversal Media LLC ("Defendant" or "NBC"), alleging two causes of action for employment discrimination and constructive discharge, in violation of the Americans with Disabilities Act ("ADA"). *See generally* Compl., ECF No. 1. Before the Court is Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's claims.[1] *See* ECF No. 13. For the reasons discussed herein, Defendant's motion is **GRANTED**.

## BACKGROUND

    "The following facts are drawn from the [C]omplaint and are assumed to be true for the purposes of this motion." *Cooper v. Templeton*, 629 F. Supp. 3d 223, 228 (S.D.N.Y. 2022), *aff'd sub nom. Cooper v. Franklin Templeton Invs.*, No. 22 Civ. 2763, 2023 WL 3882977 (2d Cir. June 8, 2023).

    Plaintiff was employed by NBC as a Content Producer from September 2019 to February 8, 2022. *See* Compl. ¶¶ 6-7. Plaintiff "has physical impairments that substantially limit one or

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

more of her major life activities, including but not limited to her circulatory system's functioning, walking, standing, breathing, [and] performing manual/physical tasks involving use of her hands." *Id.* ¶ 34.

Between June 2020 and October 2020, Plaintiff took medical leave to recover from surgery "to alleviate the symptoms of trigger fingers and De Quervain's tenosynovitis in her wrists, fingers, and hands." *Id.* ¶ 8. In or around October 2020, Plaintiff requested an accommodation to work from home while she continued to recover from her surgery. *Id.* ¶ 10. The News Director at NBC "denied the request outright[.]" *Id.* ¶ 11. Thereafter, NBC assigned Plaintiff "additional writing and editing work each week[,] which usually took three (3) to four (4) hours to complete." *Id.* ¶ 12. As a result of the extra work and Defendant's denial of Plaintiff's accommodation request, "Plaintiff could not fully recuperate and her condition deteriorated further, forcing her to take a second medical leave for another round of surgeries in June of 2021." *Id.* ¶¶ 13-14.

In order to work on site at NBC, Plaintiff was required to be fully vaccinated (i.e., receive two doses of the COVID-19 vaccine) by February 10, 2022. *Id.* ¶ 16 n.2. In August 2021, Plaintiff received the first dose of the COVID-19 vaccine, to which she had an adverse medical reaction. *Id.* ¶ 15. Plaintiff's physician advised her that "receiving a second dose of the vaccine could cause reactions even worse than those she experienced after taking the first dose of the vaccine" due to her underlying conditions. *Id.* ¶ 16. Plaintiff therefore sought a medical exemption from the requirement to take the second dose of the COVID-19 vaccine, submitted to Lynn Costa ("Costa"), Vice President of Human Resources at NBC, who instructed Plaintiff to seek a second opinion from a third-party medical service. *See id.* ¶¶ 17-18. Costa further informed Plaintiff that any accommodation to work from home "would be temporary because the

2

position was going to become 'on-site only.'" *Id.* ¶ 20; *see also id.* ¶ 47 ("Defendant made it clear that any accommodation would be temporary.").

On December 31, 2021, after complying with Costa's request to seek a second medical opinion, Plaintiff filed her request for an accommodation to work from home, to ensure that she could continue her employment. *Id.* ¶ 21. At some point thereafter, "NBC Universal employees" told Plaintiff that she should get vaccinated because it was the "right thing to do" and "everyone else is doing it." *Id.* ¶ 51.

While Plaintiff's accommodation request was pending, she was not allowed to work from home. *Id.* ¶ 22. On January 15, 2022, Plaintiff began applying for jobs outside of her field, to ensure consistent employment. *Id.* ¶¶ 24-25. On February 1, 2022, she resigned from her position. *Id.* ¶ 26. On February 4, 2024, Plaintiff explained that she was resigning "because of NYC's vaccine mandate 2nd dose requirement and my medical issue from the first COVID shot[.]" *Id.* ¶ 27.

On February 8, 2022, Defendant informed Plaintiff for the first time that her request for accommodation had been approved on February 1, 2022. *Id.* ¶ 29. Defendant did not offer to reinstate Plaintiff. *Id.*

## LEGAL STANDARDS

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). A court may not dismiss claims unless the plaintiff has failed to plead facts sufficient to state a claim to relief that is facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Generally, "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)). Nevertheless, "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id.* "A court accordingly may dismiss a claim on statute-of-limitations grounds at the pleading stage 'if [the] complaint clearly shows the claim is out of time.'" *Whiteside v. Hover-Davis*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999)).

**DISCUSSION**

**A. Time-Barred Claims**

For Plaintiff's ADA claims to be timely, the alleged discrimination must have occurred "no more than 300 days prior to the filing of the administrative charge." *Lovell v. Staten*, No. 17 Civ. 6874, 2019 WL 4601665, at *4 (S.D.N.Y. Sept. 23, 2019); *Tewksbubry v. Ottaway Newspapers, Inc.* 192 F.3d 322, 328-29 (2d Cir. 1999); *see also* 42 U.S.C. § 2000e-5(e)(1).

4

Here, Plaintiff filed her EEOC claim on August 22, 2022. *See* Bryton Decl. Ex. B, ECF No. 15-2.[2] Accordingly, claims arising out of incidents that occurred before October 26, 2021 (i.e, 300 days before Plaintiff's filing) are time-barred on their face.

To avoid the statute of limitations, Plaintiff argues that her "claims prior to October 26, 2021 are not time-barred pursuant to the continuing violations doctrine," because Plaintiff "has pled specific and related instances of disability discrimination." Pl.'s Opp'n to the Mot. to Dismiss ("Pl.'s Opp'n") 10-11, ECF No. 21. Under the continuing violations doctrine, "if a plaintiff has experienced a *continuous* practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (emphasis added); *see also Philbert v. City of New York*, No. 21 Civ. 3119, 2022 WL 94574, at *11 (S.D.N.Y. Jan. 7, 2022) ("The ADA . . . enables a plaintiff to avoid the statute of limitations where she can establish a continuing violation."). Acts that are "isolated in time" either "from each other" or "from the timely allegations" generally "break the asserted continuum of discrimination," rendering the doctrine inapplicable. *Fitzgerald*, 251 F.3d at 359. "Discrete acts" that break the continuum "are easy to identify," as they "constitute[] [] separate actionable unlawful employment practice[s]." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see, e.g.*, *Purcell v. N.Y. Inst. of Tech., Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019) (affirming dismissal of untimely ADA claims that were "separated by almost two years" from the timely claims).

---

[2] Because "[P]laintiff's EEOC charge … [is a matter of public record[], . . . this Court may take judicial notice" and consider the document "without converting this argument into a motion for summary judgment." *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006).

Plaintiff alleges two adverse employment actions. First, in or around October 2020, Plaintiff requested and was denied an accommodation to work from home as she recovered from surgery. Compl. ¶ 10. Next, in or around February 2022, Defendant was delayed in approving Plaintiff's accommodation request to work from home, which she submitted because she could not receive the second dose of the COVID-19 vaccine. *See id*. ¶¶ 21-27. The incidents occurred well over a year apart and comprise two separate acts (i.e., failure to accommodate Plaintiff's recovery from surgery and delayed approval of an accommodation as to the vaccine mandate). While Plaintiff contends that the events were related, she does not explain how these acts "collectively constitute one unlawful practice." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). "[M]ultiple and *even similar* discriminatory acts that are merely discrete incidents of discrimination and are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation." *Lomako v. New York Inst. of Tech.*, No. 9 Civ. 6066, 2010 WL 1915041, at *5 (S.D.N.Y. May 12, 2010), *aff'd*, 440 F. App'x 1 (2d Cir. 2011). That is the case here, where "nothing alleged by Plaintiff binds together the instances of alleged discrimination." *Id.* Thus, any claim arising out of Defendant's alleged failure to grant Plaintiff's October 2020 accommodation request related to her recovery from surgery, *see* Compl. ¶ 10, is time-barred. Plaintiff's only timely allegation arises out of her December 2021 vaccine accommodation request. The Court addresses the merits of this claim in the sections that follow.

### B. Disability Discrimination

#### a. Legal Standards

***Failure to Accommodate***. The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination in violation of the ADA includes, *inter alia*, "not making

6

reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* at § 12112(b)(5)(A).  A "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8).

> A plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following: (1) Plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009).

***Constructive Denial of an Accommodation***.  A plaintiff can bring a claim for failure to accommodate even where the employer has not actually denied the accommodation, based on a theory of constructive denial in the form of a lengthy delay in approving the request.  To successfully allege that "an employer has constructively denied the employee's request for a reasonable accommodation through delay in violation of . . . the ADA, courts in the Second Circuit have consistently held that a plaintiff is required to provide evidence that the delay was motivated by the employer's discriminatory intent." *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 258 (S.D.N.Y. 2014) (collecting cases); *see also Perkins v. City of New York*, No. 22 Civ. 196, 2023 WL 370906, at *3 n.3 (2d Cir. Jan. 24, 2023) ("Numerous district courts in this Circuit have concluded that this intent requirement exists in a delayed accommodation case."); *Hamedl v. Verizon Commc'ns, Inc.*, 557 F. App'x 68, 70 (2d Cir. 2014) (affirming summary judgment for employer on reasonable accommodation claim where the plaintiff "provided no evidence that his request for an [accommodation] was delayed unreasonably due to some discriminatory intent by his employer").

*Circumstantial Evidence of Discriminatory Intent.* Where the plaintiff does not allege direct evidence of discrimination, the "plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," as it "cannot meet [its] burden through reliance on unsupported assertions." *Burnett v. Oce N. Am.*, No. 11 Civ. 6894, 2014 WL 4547037, at *5 (S.D.N.Y. Sept. 11, 2014); *see also Bernadotte v. N.Y. Hosp. Center of Queens*, No. 13 Civ. 965, 2016 WL 792399, at *5-6 (S.D.N.Y. Feb. 26, 2016) (same). For instance, the plaintiff may "show[] that the employer treated similarly situated employees not in the protected group more favorably than plaintiff." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). Or she may allege that the employer made discriminatory remarks demonstrative of "assumptions [made] or attitudes regarding the abilities of persons with [Plaintiff's disability]." *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011). "A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to meet this burden." *Brooks v. Educ. Bus Transp.*, No. 14 Civ. 3237, 2015 WL 13745440, at *10 (E.D.N.Y. Aug. 3, 2015), *report and recommendation adopted sub nom. Brooks v. Educ. Bus Transp.*, No. 14 Civ. 3237, 2015 WL 7012924 (E.D.N.Y. Nov. 12, 2015).

b. Application

The parties do not dispute that Plaintiff alleges facts sufficient to support the first three elements of her prima facie case. At issue is whether Plaintiff has sufficiently alleged that Defendant failed to make appropriate accommodations for her disability. For the reasons discussed herein, the Court concludes that she has not.

Plaintiff submitted her request to work from home on December 31, 2021. Compl. ¶ 21. Without the accommodation, Plaintiff would have been required to receive a second dose of the COVID-19 vaccine by February 10, 2024, which she could not do due to her protected disability. *See id.* ¶¶ 23, 27. On February 1, 2022, a member of Defendant's legal department informed its

8

Vice President of Human Resources that Plaintiff's request to work from home was approved. *Id.* ¶ 28. Plaintiff resigned from her position the same day, as Defendant had not yet notified her of its approval of her request. *Id*. ¶ 26. Defendant did not inform Plaintiff of its approval of her accommodation request until February 8, 2022. *Id.* ¶ 29.

While Plaintiff contends that there is a dispute of fact as to whether her accommodation request was granted, *see* Pl.'s Opp'n 7, her own allegations clearly "show that Defendant *granted* the [requested] accommodation during her employment," even if she resigned before she was notified of that decision, *Scarville v. Living Res. Corp.*, No. 21 Civ. 807, 2022 WL 4365863, at *10 (N.D.N.Y. Sept. 21, 2022) (emphasis added). Plaintiff therefore fails to plead that her request was in fact denied. *See id.* (granting motion to dismiss where in similar circumstances).

The Court next considers whether Defendant's delayed approval was a constructive denial plausibly caused by discriminatory animus. Even accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in her favor, as it is required to do, *see Giunta*, 893 F.3d at 79, the Court concludes that Plaintiff's pleadings are insufficient as a matter of law as to this claim. Plaintiff does not, for example, allege that she was disparately treated compared to any similarly situated colleague, or that Defendant targeted her with any discriminatory remarks pertaining to her disability. *See generally* Compl. She pleads only that Defendant was inexplicably delayed in approving and in notifying Plaintiff of her approved accommodation request and that unnamed NBC employees described vaccination as the "right thing to do." *Id*. ¶ 51. The Court cannot reasonably draw an inference of discriminatory motive "where one does not exist from the allegations in the complaint." *Tillman v. N.Y.C. Dep't of Hum. Res. Admin.*, No. 20 Civ. 1153, 2022 WL 874947, at *5 (S.D.N.Y. Mar. 24, 2022), *aff'd*, No. 22 Civ. 872, 2023 WL 2770218 (2d Cir. Apr. 4, 2023).

Plaintiff primarily argues that Defendant's "delay and failure to engage was a constructive denial," because it demonstrated Defendant's "unreasonableness" or "bad faith." Pl.'s Opp'n 9. Plaintiff further argues that Defendant's failure to immediately notify Plaintiff of its approval of her request "is alone sufficient to show that Defendant acted in bad faith[.]" *Id.* The Court disagrees. Once again, to plead that Defendant constructively denied her an accommodation, Plaintiff must also allege facts from which Defendant's *discriminatory intent* may be inferred. *Manessis v. N.Y.C. Dep't of Transp.*, No. 02 Civ. 359, 2003 WL 289969, at *17 (S.D.N.Y. Feb. 10, 2003) ("In failure to timely accommodate cases, plaintiff must prove that the delay was motivated by discriminatory intent."), *aff'd sub nom. Manessis v. Chasin*, 86 Fed. App'x. 464 (2d Cir. 2004). As discussed above, Plaintiff states no fact from which discriminatory intent—as "opposed to mere bureaucratic incompetence or other comparatively benign reasons," *see Logan*, 57 F. Supp. 3d at 257, such as "negligent oversight," *Manessis*, 2003 WL 289969, at *17—may be inferred. Without more, Plaintiff's allegations that Defendant delayed and failed to engage with Plaintiff over a 32-day period (i.e., the period between Plaintiff's request on December 21, 2021, and Defendant's approval on February 1, 2022) are insufficient to state a constructive denial claim. *See id.* ("[T]here is nothing here that suggests that the delay plaintiff experienced in receiving [plaintiff's requested accommodation] was motivated by discriminatory intent."). Plaintiff's disability discrimination claim (Count One) is therefore dismissed.

### C. Constructive Discharge

#### a. Legal Standards

"Constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Morris v. Schroder Cap. Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir.

2007). The Supreme Court has described a constructive discharge claim as a "worse case harassment scenario, harassment ratcheted up to the breaking point." *Pa. State Police v. Suders*, 542 U.S. 129, 147-48 (2004). "Consequently, without an actionable hostile environment claim, a plaintiff's constructive discharge claim must also fail." *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 402 (E.D.N.Y. 2016). A hostile work environment claim requires the plaintiff to allege that her "'workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 595 (S.D.N.Y. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

b. **Application**

"[A] claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Costa v. City of New York*, 546 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). That is the case here. Plaintiff's claim is that Defendant purportedly harassed her by requesting that she seek a second medical opinion, by telling her that a work from home accommodation would be temporary, by spending approximately 32 days processing Plaintiff's accommodation request, and by waiting approximately one week after approving her request before notifying her. *See generally* Compl. Rational factfinders could not conclude that these incidents were deliberate, pervasive, or objectively abusive. *See Kelly*, 200 F. Supp. 3d at 400 (dismissing hostile work environment claim where the "isolated incidents about which plaintiff complains . . . do not establish a workplace permeated with discriminatory intimidation, ridicule, and insult"). Plaintiff's allegation that unnamed "NBC Universal

employees" told her that she "should do the right thing" and get vaccinated, Compl. ¶ 51, does not save her claim, as she fails to allege either that the comments were frequent and objectively abusive, or that NBC either provided no avenue for complaints or knew about the comments but did nothing to remedy the alleged harassment. *Kelly*, 200 F. Supp. 3d at 399 (E.D.N.Y. 2016) ("When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.").

The Court cannot conclude in these circumstances that a reasonable person in Plaintiff's position plausibly would have felt forced to resign. Plaintiff's constructive discharge claim (Count Two) is dismissed.

### D. Leave to Amend

#### a. Legal Standards

As a general matter, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991). "However, leave need not be granted in cases of 'futility of amendment.'" *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023) (citing *Foman*, 371 U.S. at 182).

#### b. Application

The Court in its discretion grants Plaintiff—who has yet to amend her pleadings—leave to amend "as a matter of course," *Oliver Schs., Inc.*, 930 F.2d at 253. It concludes that it is at

12

least plausible that Plaintiff may allege facts in support of her claims of constructive denial and constructive discharge.

Defendant does not argue that it would suffer from any prejudice if Plaintiff were granted an opportunity to amend her pleadings. *See* Def.'s Reply, ECF No. 22. Defendant argues only that the Court should deny Plaintiff leave to amend because it would be futile and because Plaintiff fails to describe how she would cure her deficiencies. *See id.* at 4. The Court agrees that it would be futile to amend: (1) any claim with respect to Plaintiff's October 2020 accommodation request, as that claim is time-barred on its face; and (2) any claim that Plaintiff's December 2021 accommodation request was actually (as opposed to constructively) denied, when Plaintiff contends in her pleadings that Defendant in fact *granted* her request. *See* Compl. ¶ 53. But based on its required liberal reading of the pleadings, the Court cannot say at this stage that is implausible that the defects in Plaintiff's remaining claims could be cured. Notwithstanding Plaintiff's failure to explain any anticipated amendment, "'a court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 544 (S.D.N.Y. 2001) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991)). Accordingly, absent any apparent prejudice to Defendant, the Court grants Plaintiff leave to amend her constructive discharge claim insofar as it is not time-barred.

## CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Defendant's motion to dismiss.

The Clerk of Court is respectfully requested to terminate ECF No. 13. Plaintiff may file an Amended Complaint within **three weeks** of publication of this Opinion & Order, as instructed herein. Failure to file amended pleadings by that date will result in the dismissal of her case with prejudice.

SO ORDERED.

Dated: September 5, 2024
      New York, New York

_____
DALE E. HO
United States District Judge
